EARL B. SEATON, Appellee, v. WESTERN ASPHALT PAVING COR-
PORATION, Appellant.

**RAILROADS: Accidents at Crossing—Negligence.** Evidence relative
1  to an attempt by plaintiff to detour his automobile around the end
of a train reviewed, and held to present a jury question on the
issue of negligence of both plaintiff and defendant.

**APPEAL AND ERROR: Harmless Error—Withdrawal of Improper**
2  **Testimony.** The definite and emphatic withdrawal of improper tes-
timony cures the error in receiving it.

**RAILROADS: Accidents at Crossing—Negligence—Instructions.** It is
3  erroneous to charge a jury that a driver is not guilty of negligence
if, when 30 feet from a railway track, he starts to drive around
the end of a train of cars and the cars are *then* standing still.

*Appeal from Monona District Court.*—W. G. SEARS, Judge.

FEBRUARY 14, 1922.

ACTION for damages resulting from a collision of plaintiff's
automobile with a train operated by the defendant. There was
a verdict and judgment thereon for the plaintiff, and the de-
fendant appeals.—*Reversed and remanded.*

*Pritchard & Pritchard* and *Robert B. Pike,* for appellant.

*M. W. Newby* and *C. E. Underhill,* for appellee.

EVANS, J.—The damages claimed are such as resulted to the
plaintiff's automobile from the collision. The collision occurred
September 20, 1919, upon the tracks of the Illinois Central Rail-
road, and upon a crossing in the town of Onawa.
1. RAILROADS: ac-  The defendant was a paving contractor, and
cidents at cross-  was engaged in the performance of a contract
ing: negligence.
for paving in the town of Onawa. It had been so engaged for
some weeks. By some arrangement with the railroad company,

the defendant used its tracks for the purpose of operating thereon its gondola cars, whereby it transported its paving materials, such as gravel and cement, to and from its mixing plant within the town. It used an engine which was so constructed as to furnish the power both for moving the cars and for loading and unloading them. In carrying on this work, it operated both night and day, using two shifts of men. The collision with plaintiff occurred at midnight, on Maple Street, which extended north and south, and crossed the railroad tracks at right angles. The plaintiff came from the north along Maple Street toward this crossing, and observed that the planked portion of the crossing was completely blocked by a string of defendant's cars. When within 30 or more feet from the crossing, he stopped his auto for a moment. He testified that he looked for lights, but saw none, and was unable to discover anyone about the cars or any indication that the cars were to be moved. The street was 80 feet wide, and level and passable for its full width. The plank crossing was 16 feet wide. The string of cars extended eastward approximately 300 feet, with the engine at the east end thereof. The west end of the string extended just over the west end of the plank crossing, leaving a space of about 30 feet from the west end of the train to the west side of Maple Street. After stopping for a moment, the plaintiff conceived the purpose of detouring from the center of the street westerly around the west end of the train. Before he had completed the crossing of the rails, the train moved westerly quite slowly, and came in contact with plaintiff's auto, whereby it was greatly damaged. As claimed by plaintiff, no lookout was maintained and no signals of warning were given against such start. Such was the case according to the evidence for the plaintiff.

On the other hand, the evidence for the defendant showed that the engine, which was faced westerly (the string of cars being in front of it), carried a strong light which shone the full length of the train, and was readily visible from Maple Street, where the plaintiff was; that two lookouts were present at the west end, one stationed on the north side and the other on the south; that the lookout on the north side carried a lantern, and saw the approach of the plaintiff, and signaled him to stop;

that the signals were followed by a vigorous call of warning, all of which was of no avail; that, just previous to the starting of plaintiff on his detour, the lookout on the north side had given a signal to the engineer to start; and that, a moment later, when he saw the course of plaintiff in his detour, he gave an immediate signal to stop, which latter signal was obeyed instantly; that, though the stopping of the engine was instantaneous, the stopping of the cars was not quite so, because of the slack, which permitted the cars to move a slight distance after the stopping of the engine; that the string of cars had stopped upon the crossing but a few moments before the arrival of the plaintiff; that it was being operated in regular course and manner; and that the plaintiff, who lived near by, was familiar with its method of operation both night and day; that the engine gave the usual starting signal, and the lookout used his utmost endeavor to warn the plaintiff of the danger of his course.

Such is the substance of the evidence pro and con. The two questions arising out of the evidence were:

(1)    Was the defendant negligent?

(2)    Was the plaintiff negligent?

At the close of all the evidence, the defendant moved for a directed verdict, on the ground that the evidence failed to show any negligence of the defendant, and on the further ground that the plaintiff failed to show freedom from contributory negligence. The trial court overruled the motion. We think the ruling was proper. Under the evidence, both questions were for the jury.

Some evidence was introduced on behalf of the plaintiff to the effect that the defendant had previously and quite habitually blocked the streets. This was received, over appropriate objection. Later, the court, by admonition to **2. APPEAL AND ERROR: harmless error: withdrawal of improper testimony.** the jury, withdrew all such evidence. Appellant complains that such withdrawal was not sufficiently specific, and was, therefore, ineffective. Neither was this complaint well taken. The withdrawal was comprehensive and emphatic, and applied, in terms, to *all* evidence of that nature. We think it was sufficient.

The serious question in the case arises out of the second paragraph of Instruction 7, which was as follows:

"The uncontroverted evidence in this case shows that, in crossing said track, the plaintiff detoured around the west end of said defendant's string of cars; and you are instructed that the plaintiff must prove to you by a preponderance of the evidence that, at the time he started to make the said detour of said cars operated by defendant, that the said cars were standing still, then plaintiff had the right to make said crossing to the west of said cars in said manner, and plaintiff would not be guilty of contributory negligence in attempting to pass to the west of said cars by making said detour; but if he has not so proven the same by a preponderance of the evidence, then he was guilty of contributory negligence as to this act."

3. RAILROADS: accidents at crossing: negligence: instructions.

It will be noted that this instruction was peremptory to the effect that, if the cars were "standing still" at the time plaintiff "started to make the said detour," then plaintiff would not be guilty of contributory negligence in attempting to pass to the west of said cars. By this instruction, the question whether the cars were standing still at the particular moment was made the sole criterion whereby plaintiff's negligence was to be judged. The plaintiff made his stop in the center of an 80-foot street, and 30 or more feet north of the crossing. Even though the cars had been standing still when plaintiff made his start for the detour, plaintiff was not thereby absolved from continuing to use care. Though they were standing still when he started, they might have been moving when he attempted the crossing. The jury could have so found as a fact, from the evidence for the defendant.

We think we can see between the lines what probably was in the mind of the trial court in formulating the instruction. This was that, if the cars had been moving when the plaintiff started his detour, he would have been guilty of contributory negligence as a matter of law, in attempting to pass to the west of the moving train; whereas, if the cars were standing still, he would not be so guilty as a matter of law. This, however, was not the thought actually expressed in the instruction. Moreover, if it had been, it would not be free from objection as misleading to the jury. It was enough for the jury to know that, under the evidence, it was a question for it to decide whether

the plaintiff was guilty of negligence or not. There was no proper occasion for saying to the jury that the plaintiff would *not* be negligent upon any hypothesis, though it might be proper, upon the reverse hypothesis, to say that plaintiff *would* be guilty of negligence.

Assuming that the jury found that the train was "standing still" when the plaintiff started, the jury, under this instruction, could have considered the question of negligence as settled by such fact, and to be beyond their further consideration. We are constrained to hold, therefore, that there was prejudicial error at this point. The judgment below is, accordingly, reversed.—*Reversed and remanded.*

STEVENS, C. J., ARTHUR and FAVILLE, JJ., concur.